

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 771 | **DATE** | 6/14/2002 |
| **CASE TITLE** | Metamorfyx, L.L.C. vs. Belkin Components | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to disqualify the law firm of Bryan Cave [11-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 18 2002 | 23 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | S.B. | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/17/2002 | |
| MD | courtroom deputy's initials | 02 JUN 18 AM 8:22 | date mailed notice MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| METAMORFYX, L.L.C., | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 02 C 0771 |
| BELKIN COMPONENTS, | ) ) ) | |
| Defendant. | ) | |

**DOCKETED JUN 1 8 2002**

## MEMORANDUM OPINION AND ORDER

Plaintiff, Metamorfyx, L.L.C. ("Metamorfyx"), has moved to disqualify the law firm of Bryan Cave L.L.C. ("Bryan Cave"), from representing defendant Belkin Components ("Belkin") in the pending patent litigation. For the reasons stated below, the motion is denied.

## PROCEDURAL STANDARD

Metamorfyx has submitted affidavits in support of its motion, and Belkin has responded in kind with affidavits and documentary evidence. The court infers, then, that the parties expect the court to treat the motion as, in essence, cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The court will rely only on the evidence submitted by way of affidavits or documents, and only if it finds there is a dispute of fact that would bear on the outcome will it hold an evidentiary hearing.



## FACTS

The facts, as proffered by Metamorfyx, are as follows: During the past five years, plaintiff has engaged in litigation and negotiations with various companies including Microsoft Corporation ("Microsoft") and Silitek Corporation ("Silitek"), concerning infringement of plaintiff's patented ergonomic keyboard technology. One of plaintiff's corporate directors, Robert Granadino ("Robert"), asked his wife, Gloria Granadino ("Gloria"), to seek representation from Bryan Cave regarding these matters. Gloria worked at that time as an administrative assistant for Lynn Thompson ("Thompson") and Leslie Helmer ("Helmer"), both attorneys at Bryan Cave. Around or about March 1997, Gloria approached Thompson about representing Metamorfyx, but Bryan Cave was not retained. At a later time, while plaintiff was completing its negotiations with Microsoft, Helmer, an employment attorney, asked Gloria about the status of plaintiff's negotiations. Gloria told Helmer that the negotiations were confidential and continued with their conversation only after Helmer agreed that she was acting as plaintiff's attorney and that the conversation would be kept confidential, pursuant to attorney-client privilege.

Throughout the remainder of plaintiff's negotiations with Microsoft and with a subsequent licensee, Silitek, Gloria sought Helmer's advice as requested by her husband on whether plaintiff should accept Microsoft's settlement terms. Helmer advised Gloria that plaintiff should accept Microsoft's offer. Robert also requested that Gloria obtain Helmer's advice on other issues that arose with potential licensees, and Gloria sought and received advice which she passed along to her husband. Throughout this time, Gloria as well as Robert believed that the information would be held in confidence and protected by attorney-client privilege.

2

Further, Gloria as well as Robert now believe that the information she provided to Helmer would work to plaintiff's disadvantage in the present litigation.

Belkin's version of the facts is remarkably different: Attorney Helmer attests that she never agreed to represent Metamorfyx, that she did not complete or submit a "conflicts check" memorandum for Gloria, Robert or Metamorfyx, as Bryan Cave requires of all new clients, and that Gloria never asked her for any advice about Metamorfyx's settlements with Microsoft or Silitek or provided her with specific information about the patent or negotiations. Moreover, Helmer attests that she is an employment attorney, not a patent attorney, that she has no experience in negotiating patent settlements, and that Gloria told her that she and her husband were being represented by a high-powered patent attorney from Aspen, Colorado, in their negotiations with Microsoft.

## DISCUSSION

Belkin objects to the affidavits of Robert and Gloria as self-serving. The argument is well taken. *See Hall* v. *Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) ("It is well settled that conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact."). Although the affidavits attest to one-on-one private conversations which by their nature cannot be corroborated, the absence of supporting evidence such as that Gloria took part in running the business of Metamorfyx,[1] that Robert had authority to engage counsel on behalf of Metamorfyx or to dispatch Gloria to do so, that documents were given to

---

[1] Plaintiff argues that Gloria had significant authority at Metamorfyx, but this statement is not supported by any evidence. It is therefore disregarded.

3

Helmer on which she might have based legal advice, or that Metamorfyx was not otherwise represented in the negotiations, belies the credibility of the affidavits to such an extent that they may not be given credit as a matter of law. Thus, Metamorfyx's motion must fail at the outset.

Nevertheless, the court will comment a bit further:

Plaintiff argues that an implied attorney-client relationship existed between Bryan Cave and plaintiff due to Helmer's discussions with Gloria during plaintiff's negotiations with various companies (Mot. at 8), and that under the "substantial relationship test," *Cannon v. U.S. Acoustics Corp.*, 398 F. Supp. 209, 223, 223-34 (N.D. Ill. 1975), Helmer's former representation of plaintiff creates a conflict of interest that is imputed to Bryan Cave (Mot. at 10-12). Defendant responds that no implied attorney-client relationship was formed because plaintiff cites no authority that a party can form such a relationship when the wife of one of its directors shares allegedly confidential information with an attorney with whom she works. (Resp. at p. 6). In reply, plaintiff asserts that because Gloria acted at the behest of a director of plaintiff, an attorney-client relationship was formed.

As a backdrop, the court will quote Magistrate Judge Schenkier of this court, who recently stated in *Commonwealth Ins. Co. v. Stone Container Corp.*, 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001):

> We begin our analysis with the recognition that "[c]lients and the public will not repose confidence 'in lawyers whom they distrust and will not trust law firms that switch sides nimbly.'" *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir. 1983). "The maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important a consideration . . . that a court may disqualify an attorney for failing to avoid even the appearance of impropriety." *International Business Machines Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978). At the same time, we recognize that motions

4

for disqualification "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). For this reason, "disqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993) (quoting *Schiessle v. Stephens*, 717 F.2d 417-19 (7th Cir. 1983)). The moving party "bears a heavy burden of proving facts required for disqualification." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983) (cited with approval in *Guillen v. City of Chicago*, 956 F.Supp. 1416, 1421 (N.D. Ill. 1997)).

Even where no express contract has been entered into or where no fees are paid, an "implied" attorney-client relationship may be shown if a party submitted confidential information to a lawyer with the reasonable belief that the lawyer was acting as the party's attorney. "The professional relationship . . . 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.'" *Westinghouse Elec. Corp. v. Kerr-Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978), quoting MCCORMICK ON EVIDENCE § 88, at 179 (2d ed. 1972).[2] Such relationship "may result because of the nature of the work performed and the circumstances under which confidential information is divulged." *Id.* at 1319.

Citing *Rager v. Boise Cascade Corp.*, No. 88 C 1436, 1988 WL 84724, at *2 (N.D. Ill. Aug. 5, 1988), in which this court (then sitting as a magistrate judge) determined that an individual employed by an entity hired by a corporation was within the corporation's attorney-client privilege, plaintiff argues that Gloria was an agent of plaintiff and thus authorized to enter into an attorney-client relationship for it. In *Rager* the court determined that a corporation could assert the attorney-client privilege regarding conversations with a non-employee who had been engaged to represent the corporation in an unemployment compensation matter, determining that

---

[2]The court also quoted R. Wise, LEGAL ETHICS 284 (1970), "The deciding factor is what the prospective client thought when he made the disclosure, not what the lawyer thought." *Westinghouse Elec. Corp.*, 580 F.2d at 1320, n.14.

5

he was acting as "an employee or agent of the corporation," rather than an independent contractor, and that "protecting his communications with [defendant's in-house counsel] is consistent with the purpose of the attorney-client privilege in the corporate context." *Id.* at *3. In reaching that conclusion, the court relied on several principles that create agency: (1) the agent must have power to affect the legal relations of the principal and others; (2) the agent must be a fiduciary who works on behalf of the principal and primarily for his benefit; and (3) the principal has the right to control the conduct of the agent. *Id.* at *4. Plaintiff's reliance on *Rager* is not helpful to it. There is nothing before the court that indicates that Gloria fulfills any of these criteria in relation to Metamorfyx. Because Gloria was a legal stranger to Metamorfyx, she could not possibly have conveyed privileged information to Helmer.

Further, because Gloria is a stranger to Metamorfyx, Metamorfyx cannot rest on the holding in *Westinghouse Electric Corporation*. There, the court disqualified a law firm which had represented the American Petroleum Institute ("API"), a lobbying organization of which three defendants were members, from representing the plaintiff in a later lawsuit. These defendants had previously submitted confidential information to the law firm on behalf of the API and the firm had met with or interviewed several executives from two of the defendants. The appeals court rejected the district court's view that because the firm had not been an agent of any defendant, it did not have an attorney-client relationship with them.[3] The court provided five examples where an attorney-client relationship could be formed where there is no express

---

[3]Although both *Rager* and *Westinghouse Elec. Corp.* speak of agency relationship, they do so in different contexts. In *Westinghouse*, the "agency-principal" discussion concerned whether the lawyer had formerly been in a fiduciary relationship, beyond mere agency, with certain defendants, whereas in *Rager* the question was whether a hired representative was an agent of the corporation.

relationship but a fiduciary obligation or implied professional relationship. These examples included where a prospective client consults with an attorney with the view of retaining the attorney[4]; attorneys exchange information concerning their clients, who are co-defendants, and one of those attorneys may use information to the detriment of a co-defendant; an attorney retained by an insurer investigates an insured's claim and the insured cooperates with the attorney pursuant to a cooperation clause in the insurance policy; a law firm hired by an auditor's regional counsel represents plaintiffs suing the auditor; a law firm representing a plaintiff in an action and a corporation that owned 20% of the defendant's outstanding stock. In contrast to these situations where the court concluded that fiduciary obligations arose, here the evidence, even if credited, is simply too thin to demonstrate either that the nature of the work performed and the circumstances under which confidential information (if any) was divulged justifies implying an attorney-client relationship. Because there was no attorney-client relationship, there is no need to address the "substantial relationship" test for whether a conflict of interest exists.

Nevertheless, it is apparent from the submissions that Gloria and Helmer had some conversations about Metamorfyx. To avoid any appearance of impropriety, the court will direct Bryan Cave to file a declaration that Helmer will not communicate any further information (other than what she has disclosed in preparing her affidavits of May 6, 2002 and June 10, 2002) that she learned from Gloria to any other person at Bryan Cave associated with the pending litigation.

---

[4]While plaintiff mentions that Gloria first approached another attorney about whether this attorney would represent plaintiff, plaintiff's motion for disqualification is not premised on this example.

## CONCLUSION

Wherefore, for the reasons set forth above, the court denies plaintiff's motion to disqualify the law firm Bryan Cave [#11], finding that no implied attorney-client relationship existed between plaintiff and Leslie Helmer. Bryan Cave is given until July 1, 2002 to file its declaration as set forth above.

ENTER: /s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: June 14, 2002